Susan PRESTON, Plaintiff–Appellant,

v.

COMMONWEALTH OF VIRGINIA ex rel. NEW RIVER COMMUNITY COLLEGE, Defendant–Appellee,

and

David R. Pierce, Chancellor State Board for Community Colleges; Lawrence H. Framme, III, Chairman, State Board for Community Colleges; T.A. Carter, Jr., Board Member, State Board for Community Colleges; William D. Dolan, III, Board Member, State Board for Community Colleges; George H. Gilliam, Board Member, State Board for Community Colleges; Irving M. Groves, Jr., Board Member, State Board for Community Colleges; Evelyn M. Hailey, Board Member, State Board for Community Colleges; Jack L. Hite, Board Member, State Board for Community Colleges; George J. Kostel, Board Member, State Board for Community Colleges; Leonard W. Lambert, Board Member, State Board for Community Colleges; Robert E. Parker, Jr., Board Member, State Board for Community Colleges; Nellie B. Quander, Board Member, State Board for Community Colleges; Dorothy W. Schick, Board Member, State Board for Community Colleges; George J. Stevenson, Board Member, State Board for Community Colleges; Doreen S. Williams, Vice Chairman, State Board for Community Colleges; Floyd M. Hogue, President, New River Community College; Roger K. Lewis, Board Member, New River Community College Board; Karen Thompson, Board Member, New River Community College Board; David B. Hunt, Board Member, New River Community College Board; Martha H. Bolt, Board Member, New River Community College Board; David G. Larsen, Board Member, New River Community College Board; Shirley M. Gerken, Board Member, New River Community College Board; William H. Elmore, Board Member, New River Community College Board; George F. Penn, Sr., Board Member, New River Community College Board; Jerry R. Whitehurst, Board Member, New River Community College Board; H.B. Whitt, Jr., Board Member, New River Community College Board, Defendants.

No. 93–1268.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 25, 1993.

Decided Aug. 3, 1994.

**ARGUED:** Jeffrey Alan Fleischhauer, Bird, Kinder & Huffman, P.C., Roanoke, VA, for appellant. Guy Winston Horsley, Jr., Sr. Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellee. **ON BRIEF:** Donald W. Huffman, L. Brad Bradford, Bird, Kinder & Huffman, P.C., Roanoke, VA, for appellant. Stephen D. Rosenthal, Atty. Gen. of VA, Milton K. Brown, Jr., Deputy Atty. Gen., Neil A.G. McPhie, Sr. Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellee.

Before RUSSELL and WILKINS, Circuit Judges, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Judge DONALD RUSSELL and Judge REBECCA BEACH SMITH joined.

## OPINION

WILKINS, Circuit Judge:

Susan Preston brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* (West 1981 & Supp.1994), and Title IX of the Education Amendments of 1972, 20 U.S.C.A. § 1681 *et seq.* (West 1990), alleging that her employer, New River Community College, retaliated against her for filing a claim of employment discrimination.[1] A jury concluded that the

---

1. The district court originally granted summary    judgment against Preston on her claim under

College had discriminated against Preston in its consideration of her for the position of activities counselor in 1989, but that Preston would not have received the position even if the College had not discriminated against her. The district court ruled that Preston was not entitled to damages, injunctive relief, or attorney's fees. She appeals, claiming that the determination of the jury that she would not have been awarded the position of activities counselor in the absence of the College's retaliation does not foreclose her entitlement to relief under Title IX. We affirm.

## I.

Preston was employed by the College in 1980 as a counselor for student support services. In 1984 she and two other female employees of the College filed a claim of discrimination with the Office of Civil Rights of the Department of Education and with the Equal Employment Opportunity Commission (EEOC), charging that the College discriminated against them in its hiring practices on the basis of race and gender. Thereafter, in June and December 1985, Preston applied for, but was not awarded, the position of counselor for student development. In 1989 she applied for, but was denied, the position of activities counselor; and in 1990 she filed this action, alleging that the College failed to award her the position of activities counselor in retaliation for filing the 1984 discrimination charge.

At the conclusion of the trial, the court submitted to the jury a verdict form containing two special interrogatories. The first special interrogatory asked the jury whether it found that Preston's filing of the discrimination charge in 1984 was "a substantial or motivating factor in the College's decision not to award the position of activities counselor to plaintiff ... in 1989." The jury answered in the affirmative. The second special interrogatory asked the jury whether it found that Preston would have been awarded the position of activities counselor in 1989 if she had not filed the employment discrimination charge in 1984. The jury responded in the negative, thus stating that Preston would not have received the position even if the College had not discriminated against her.

The district court apparently concluded that the decision of the jury, that Preston would not have received the position of activities counselor even if the College had not discriminated against her, foreclosed any recovery. The court later denied, apparently on the same reasoning, Preston's motion to reconsider in which she maintained that she was entitled to injunctive relief, damages, and attorney's fees under Title IX. Preston appeals this latter ruling.

## II.

Title IX provides in pertinent part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C.A. § 1681(a). An implied private right of action exists for enforcement of Title IX. *Cannon v. University of Chicago*, 441

---

Title VII for failure to satisfy the filing requirements of 42 U.S.C.A. § 2000e–5 and dismissed her claim under Title IX for failure to state a claim upon which relief could be granted. This court reversed in part and remanded for further proceedings. *Preston v. Commonwealth of Va.*, No. 91–2020, 1991 WL 156224 (4th Cir. Aug. 16, 1991). We held that Preston had raised a genuine issue of material fact concerning whether her filing was timely with respect to the last alleged incident of discrimination—her claim that she was denied the position of activities counselor in 1989—and consequently summary judgment on this portion of her Title VII claim was improper. *Id.*, slip op. at 6. In addition, without reaching the question of whether Preston would be enti-

tled to monetary damages, we held that the district court erred in dismissing Preston's Title IX claim because she would be entitled to at least prospective equitable relief were she to prove her Title IX claim. *Id.*, slip op. at 7.

During the trial that followed our remand, Preston's testimony and supporting documentation demonstrated that she timely complied with the filing requirements of 42 U.S.C.A. § 2000e–5. Moreover, following our remand the Supreme Court ruled that compensatory damages may be awarded for intentional violations of Title IX. *See Franklin v. Gwinnett County Pub. Schs.*, —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). This implied right extends to employment discrimination on the basis of gender by educational institutions receiving federal funds. *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). Retaliation against an employee for filing a claim of gender discrimination is prohibited under Title IX.[2] The question before this court, then, is whether the determination of the jury that Preston would not have received the position of activities counselor even if she had not been the victim of intentional discrimination forecloses her right to any recovery under Title IX.

In deciding whether a private right of action existed under Title IX, the Supreme Court wrote:

> Only two facts alleged in the complaints are relevant to our decision. First, petitioner was excluded from participation in the respondents' medical education programs *because* of her sex. Second, these education programs were receiving federal financial assistance at the time of her exclusion. These facts, admitted *arguendo* by respondents' motion to dismiss the complaints, establish a violation of ... Title IX.

*Cannon,* 441 U.S. at 680, 99 S.Ct. at 1949 (emphasis added). In reciting the facts that the Court deemed adequate to allege a violation of Title IX, it included the fact that the improper discrimination caused harm to the claimant. Thus, it implicitly recognized the necessity of causation.

In addition, the Supreme Court has rejected, in other contexts, the notion that an alleged victim of illegal retaliation in employment is entitled to relief merely because improper considerations played a part—even a substantial part—in the decision-making process. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–86, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977)

(stating that a decision not to rehire an employee, based in substantial part on employee's engaging in constitutionally protected activity, does not constitute a "violation justifying remedial action," when the employee would not have been rehired in any event). Rather, the Court has held that an employer is not liable if it would have reached the same employment decision "in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576. This is so, the Court reasoned, because to vindicate protected rights it is unnecessary to place an individual who suffered discrimination in a better position than the individual would have occupied if the discrimination had not occurred. *Id.* at 285–86, 97 S.Ct. at 575–76.

█ This reasoning has been adopted and applied in the Title VII context. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). And, although the Supreme Court has specifically reserved the question of whether Title IX claims should be governed by the same principles applicable to Title VII actions, *see Franklin v. Gwinnett County Pub. Schs.,* —— U.S. ——, —— n. 4, 112 S.Ct. 1028, 1032 n. 4, 117 L.Ed.2d 208 (1992), most courts that have addressed the question have indicated that Title VII principles should be applied to Title IX actions, at least insofar as those actions raise employment discrimination claims. *See Roberts v. Colorado State Bd. of Agric.,* 998 F.2d 824, 832 (10th Cir.) (Title VII is " 'the most appropriate analogue when defining Title IX's substantive standards.' "), *cert. denied,* —— U.S. ——, 114 S.Ct. 580, 126 L.Ed.2d 478 (1993); *Cohen v. Brown Univ.,* 991 F.2d 888, 902 (1st Cir.1993) (indicating that application of Title VII principles in Title IX employment discrimination actions was "perhaps" appropriate); *Lipsett v. University of P.R.,* 864 F.2d 881, 896–97 (1st Cir.1988) (holding Title VII concepts apply in Title IX employment discrimination action);

---

**2.** Congress intended that Title IX be interpreted and enforced in the same manner as Title VI of the Civil Rights Act of 1964, *Cannon,* 441 U.S. at 696, 99 S.Ct. at 1957–58, and the Department of Education regulations incorporate by reference into Title IX all procedural provisions applicable to Title VI, 34 C.F.R. § 106.71 (1993). One of these regulations, 34 C.F.R. § 100.7(e) (1993),

prohibits retaliation for filing a claim of discrimination. We previously concluded that the Secretary of Education's determination that Title IX should be read to prohibit retaliation based on the filing of a complaint of gender discrimination is reasonably related to the purpose of Title IX and therefore is entitled to deference by this court. *See Preston,* No. 91–2020, slip op. at 7.

*O'Connor v. Peru State College,* 781 F.2d 632, 642 n. 8 (8th Cir.1986) (stating that Title IX employment discrimination claim was duplicative of plaintiff's Title VII claim); *see also* 28 C.F.R. § 42.604 (1993). *But see Franklin v. Gwinnett County Pub. Schs.,* 911 F.2d 617, 622 (11th Cir.1990) (refusing to apply Title VII principles to Title IX), *rev'd on other grounds,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Indeed, the only court of appeals to have actually applied Title IX in the employment discrimination context has suggested that a plaintiff's Title IX claim would be defeated by proof that the defendant would have reached the same employment decision absent the improper motive. *Lipsett,* 864 F.2d at 897–899. We agree that Title VII, and the judicial interpretations of it, provide a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX.

■ The question remains, however, whether we should construe Title IX as Title VII was construed at the time the events underlying this action occurred or whether we should construe it in accordance with the way Title VII has been amended by Congress in the interim. In 1991 Congress passed the Civil Rights Act of 1991(CRA). Section 107 of the CRA legislatively overruled the holding of the Supreme Court in *Price Waterhouse* with respect to causation by adding the following language:

> [A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C.A. § 2000e–2(m) (West Supp.1994).[3] This language permits a finding that an employer has committed an unlawful employment practice whenever an improper consideration is a motivating factor in an employment decision, irrespective of whether the employer would have taken the same action in the absence of the improper consideration. However, when an employee demonstrates a

violation of § 2000e–2(m), the relief available may be limited:

> On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C.A. § 2000e–5(g)(2)(B) (West Supp. 1994).

If Congress had provided that § 107 should be applied retroactively, we could easily conclude that Title IX should be construed in accordance with the amended Title VII provision because an express retroactivity provision would indicate that the *Price Waterhouse* Court misconstrued congressional intent in interpreting Title VII. However, Congress failed to express a clear intent that § 107 apply retroactively. *See Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——–——, 114 S.Ct. 1510, 1515–17, 128 L.Ed.2d 274 (1994); *Landgraf v. USI Film Prods.,* —— U.S. ——, ——–——, 114 S.Ct. 1483, 1495–96, 128 L.Ed.2d 229 (1994). Thus, we are left to decide whether, in the absence of a clear congressional directive, § 107 should be applied retroactively to conduct occurring before its effective date or, if not, whether Title IX should be construed in accordance with § 107 in any event.

The Supreme Court has recently ruled that substantive provisions of §§ 101 and 102 of the CRA should not be applied to conduct occurring before the effective date of the CRA. *Rivers,* —— U.S. at ——–——, 114 S.Ct. at 1519–20; *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1508. In discussing whether

---

3. The events underlying Preston's claim occurred in 1989, and she filed her complaint in 1990. The effective date of § 107 of the CRA is November 21, 1991. 42 U.S.C.A. § 2000e–2 note (West Supp.1994) (Effective Date of 1991 Amendment).

§ 102 should be applied to conduct antedating the effective date of the CRA, the Court noted that a statute operates retrospectively when it "attaches new legal consequences to events completed before its enactment," *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499, *i.e.,* when it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed," *id.* at ——, 114 S.Ct. at 1505. To the extent that § 107 provides for limited injunctive relief and attorney's fees when an employer proves that it would have made the same employment decision in the absence of an impermissible motivating factor, § 107 cannot be said to increase an employer's liability for or impose new duties with respect to prior conduct. *See id.* at ——, 114 S.Ct. at 1501 (noting that intervening statutes affecting the propriety of prospective relief do not have a retroactive impact when applied to cases pending on their effective date); *id.* at ——, 114 S.Ct. at 1503 (recognizing that a new statute authorizing attorney's fees does not operate to "'impose an additional or unforeseeable obligation'"). Nevertheless, because under prior law a finding that an employer would have reached the same employment decision absent the improper motivating factor rendered the employer free from any liability, not merely free from liability for certain remedies, *see Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794–95, we must conclude that § 107 alters the legality of the employer's conduct and thus affixes new legal consequences to past conduct.

Similarly, this reasoning convinces us that applying an interpretation of Title IX in accordance with Title VII as amended by the CRA to conduct occurring before the effective date of the amendment would amount to an impermissible retroactive application. While no settled interpretation of Title IX had been rendered by the Supreme Court at the time the challenged conduct occurred, the sole court of appeals to have addressed the issue had ruled that a Title IX employment discrimination claim should be interpreted in accordance with principles governing Title VII. *See Lipsett,* 864 F.2d at 897–899. Ac-

cordingly, we conclude that Title IX should be construed as Title VII was when the conduct at issue occurred.

■ In sum, we hold that the decision of the jury that Preston would not have received the position of activities counselor even if she had not filed the discrimination claim in 1984 compels a conclusion that the College did not violate Title IX. Thus, Preston was not entitled to relief.

## III.

Finally, the district court properly denied Preston's request for attorney's fees. Congress provided for recovery of attorney's fees in Title IX actions in 42 U.S.C.A. § 1988(b) (West Supp.1994). This section provides in pertinent part:

> In any action or proceeding to enforce a provision of ... [Title IX], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C.A. § 1988(b). Discussing the prevailing party requirement under this section, the Supreme Court has stated:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of judgment or settlement.

*Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (citations omitted). As we have previously discussed, because the jury ruled against Preston on the issue of causation, she was not entitled to any relief. Thus, she is not a prevailing party within the meaning of § 1988 and is not eligible for an award of attorney's fees thereunder.

## IV.

We conclude that the district court properly refused to award damages and injunctive relief to Preston because the jury found that

she would not have received the position of activities counselor in 1989 even if she had not filed the 1984 discrimination charge.[4] Inasmuch as Preston is not entitled to recover, she cannot be a prevailing plaintiff under § 1988. Accordingly, the district court correctly denied Preston's request for attorney's fees. The decision of the district court is affirmed.

*AFFIRMED.*

---

4. Preston also maintains that the district court erred in refusing to permit her to introduce two tapes she had made of telephone conversations that she had with friends who served on the committee that recommended candidates for the position of activities counselor in 1989. Preston, however, cannot complain about a refusal of the district court to play the first tape to the jury. As Preston conceded at oral argument, the district court did not exclude the tape. Rather, after the district court initially indicated its intention to permit the tape to be played, counsel for Preston and the College entered a stipulation concerning what the jury would be told about this tape.

With respect to the second tape, Preston testified to her recollection of her conversation with friend and committee member Jim Brumagin. Brumagin later testified for the College and was cross-examined; however, Preston's counsel did not attempt to impeach Brumagin with the tape.

At the close of the College's case, Preston attempted to offer the tape of her conversation with Brumagin as rebuttal evidence. The district court refused to admit the tape on the basis that it was not proper rebuttal evidence.

A district court possesses the discretion to control the presentation of evidence, and its decision to refuse to admit evidence because it is not properly within the scope of rebuttal will be reversed only for an abuse of discretion. *See Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). We cannot say that the refusal of the district court to permit the introduction of the tape was an abuse of discretion. Further, because the tape was not relevant to show that Preston would have received the position of activities counselor absent discrimination, any error in the refusal of the district court to introduce the tape was harmless.